# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

GUADALUPE GODINEZ,        )
                                    )
                **Plaintiff,**    )
                                    )    **CIVIL ACTION**
v.                                 )
                                    )    **No. 09-2450-JWL**
                                    )
MICHAEL J. ASTRUE,        )
**Commissioner of Social Security,**    )
                                    )
               **Defendant.**    )
_____ )

## MEMORANDUM AND ORDER

Plaintiff seeks review of a decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits (DIB) under sections 216(i) and 223 of the Social Security Act. 42 U.S.C. §§ 416(i) and 423 (hereinafter the Act). Finding no error, the court ORDERS that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

## I.     Background

Plaintiff applied for DIB on June 4, 2004[1] alleging disability since June 1, 1997. (R. 18, 66-68). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge (ALJ). (R. 13-14, 28,

_____

[1]The decision states Plaintiff filed an application on January 13, 2005 (R. 18), but the application is dated June 4, 2004. (R. 66-68).

29).  Plaintiff's request was granted, and Plaintiff appeared with counsel and testified at a hearing before ALJ George M. Bock on January 11, 2007.  (R. 18, 733-49).   On March 21, 2007, ALJ Bock issued a decision in which he found that Plaintiff was insured for DIB only through September 30, 2000, and concluded that Plaintiff was not disabled within the meaning of the Act at any time before that date.  (R. 18).

The ALJ determined that Plaintiff did not engage in substantial gainful activity between her alleged onset date and her date last insured, that during the relevant time she had diabetic retinopathy, a severe impairment within the meaning of the Act, and that her condition did not meet or equal the severity of a listed impairment.  (R. 21).  He found Plaintiff's allegations of symptoms only partially credible, and assessed her with the residual functional capacity (RFC) for a range of medium work limited to work which does not require fine visual acuity or depth perception.  Id.  Based upon the RFC assessed and "[g]iving the claimant the benefit of doubt," the ALJ found Plaintiff is unable to perform her past relevant work as a teacher's aide and production assembler.  (R. 20, 21). The ALJ considered Plaintiff's age, education, vocational experience, and RFC; stated that he used 20 C.F.R., Pt. 404, Subpt. P, App.2, Table 3, Rule 203.29 as a framework for decisionmaking; and applied Social Security Rulings (SSR) 85-15, and 96-9p in concluding that work exists in significant numbers in the economy of which Plaintiff is capable.  (R. 21-22).  He found Plaintiff not disabled and denied her application.  (R. 22).

Plaintiff sought Appeals Council review of the decision, and submitted additional evidence for its review.  (R. 13-14, 601-732).  The Appeals Council received the

additional evidence and issued an order making that evidence a part of the administrative record.  (R. 10).  It considered Plaintiff's arguments and the additional evidence presented, but denied Plaintiff's request for review.  (R. 7-9).  Therefore, the ALJ's decision is the final decision of the Commissioner.  (R. 7); Blea v. Barnhart, 466 F.3d 903, 908 (10th Cir. 2006).  Plaintiff now seeks judicial review.

## II.    Legal Standard

The court's review is guided by the Act.  42 U.S.C. § 405(g).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard.  Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord, Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by

other evidence or if it constitutes mere conclusion.  <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v.</u>

<u>Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that she has

a physical or mental impairment which prevents her from engaging in substantial gainful

activity and is expected to result in death or to last for a continuous period of at least

twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such

severity that she is not only unable to perform her past relevant work, but cannot,

considering her age, education, and work experience, engage in any other substantial

gainful work existing in the national economy.  <u>Id.</u>

The Commissioner uses a five-step sequential process to evaluate whether a

claimant is disabled.  20 C.F.R. § 404.1520 (2006); <u>Allen v. Barnhart</u>, 357 F.3d 1140,

1142 (10th Cir. 2004); <u>Ray</u>, 865 F.2d at 224.  "If a determination can be made at any of

the steps that a claimant is or is not disabled, evaluation under a subsequent step is not

necessary."  <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has

engaged in substantial gainful activity since the alleged onset, whether she has a severe

impairment, and whether the severity of her impairment(s) meets or equals the severity of

any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  <u>Id.</u>

at 750-51.  If a claimant's impairments do not meet or equal a listed impairment, the

Commissioner assesses her RFC.  20 C.F.R. § 404.1520(e).  This assessment is used at

both step four and step five of the sequential process.  <u>Id.</u>

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether claimant can perform her past relevant work, and whether, when considering vocational factors of age, education, and work experience, she is able to perform other work in the economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show jobs in the national economy within Plaintiff's capacity.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff alleges two errors in the ALJ's decision.  She claims the ALJ erroneously applied the Medical-Vocational Guidelines (20 C.F.R., Pt. 404, Subpt. P, App.2)(hereinafter the grids)–failing to seek vocational expert testimony in determining Plaintiff was not disabled.  (Pl. Br. 15-16).  She also claims the ALJ erred in failing to call upon the services of a medical advisor to testify regarding the "progress of Godinez's mental impairments prior to the expiration of her insured status."  Id. at 16-17(citing SSR 83-20).  The Commissioner argues that the ALJ properly applied the grids, and properly relied upon SSR's 85-15 and 96-9p (instead of vocational expert testimony) to determine how much Plaintiff's work capacity is further reduced by her nonexertional limitations (to work not requiring fine visual acuity or depth perception).  (Comm'r Br. 9-10).  The Commissioner also argues that in the facts of this case there was no need to consult a medical advisor because the ALJ did not find a disability with regard to which he must infer an onset date, and moreover, the record evidence does not demonstrate Plaintiff had

serious mental limitations during the relevant time.  Id. at 6-8.  The court will address the issues in the order presented in Plaintiff's brief.

### III.	Whether the ALJ Applied the Grids Erroneously?

Plaintiff argues the "ALJ committed reversible error by failing to call a vocational expert to testify." (Pl. Br. 15).  She points to the ALJ's RFC finding that Plaintiff cannot perform work requiring fine visual acuity or depth perception, and argues that because the ALJ did not secure vocational expert testimony to show how much those limitations reduce the occupational base for medium work, but applied Rule 203.29, he must have applied the grids conclusively.  Id.  The Commissioner argues that an ALJ is not required to secure the services of a vocational expert every time nonexertional limitations are present, and in this case SSR 85-15 provides a proper basis to find that despite the visual limitations present, there are still a substantial number of jobs available for which Plaintiff retains the ability.  (Comm'r Br. 9-10).

In the grids, the Commissioner has provided a tool to aid in making uniform, efficient decisions to determine the types and numbers of jobs existing in the national economy for certain classes of claimants.  Heckler v. Campbell, 461 U.S. 458, 468 (1983).  However, the grids are applicable "only when they describe a claimant's abilities and limitations accurately."  Id. 461 U.S. at 462 n.5; see also, Channel v. Heckler, 747 F.2d 577, 579 (10th Cir. 1984).  As Plaintiff argues, because the grids are based upon the physical exertion requirements for work, they may not be fully applicable for claimants who have nonexertional limitations.  Channel, 747 F.2d at 580. Realizing this restriction

on the use of the grids, the Commissioner has promulgated a procedure for evaluating

claims with both exertional and nonexertional impairments:

> [W]here an individual has an impairment or combination of impairments resulting in both strength limitations and nonexertional limitations, the rules in this subpart are considered in determining first whether a finding of disabled may be possible based on the strength limitations alone and, if not, the rule(s) reflecting the individual's maximum residual strength capabilities, age, education, and work experience provide a framework for consideration of how much the individual's work capability is further diminished in terms of any types of jobs that would be contraindicated by the nonexertional limitations.

Channel, 747 F.2d at 581(quoting 20 C.F.R., Pt. 404, Subpt. P, App. 2, § 200.00(e)(2)).

The grids direct a finding and may be applied conclusively in a particular case only

when there is an "exact fit" between the criteria of the grid and the situation before the

ALJ.  Campbell, 461 U.S. at 468; Channel, 747 F.2d at 579.  Where the grid rules do not

direct a finding, "full consideration must be given to all of the relevant facts in the case in

accordance with the definitions and discussions of each factor in the appropriate sections

of the regulations which will provide insight into the adjudicative weight to be accorded

each factor."  20 C.F.R., Pt. 404, Subpt. P, App. 2 § 200.00(e)(2); see also Channel, 747

F.2d at 579-82 (application of the grids where nonexertional limitations are present).

Where plaintiff is unable to do a full range of work in an exertional category, the

ALJ may not conclusively apply the grids.  Channel, 747 F.2d at 582 (error to apply the

grids absent a finding that plaintiff could perform the full range of sedentary work).

Instead, he "must give 'full consideration' to 'all the relevant facts,' App. 2,

§ 200.00(e)(2), including expert vocational testimony if necessary, in determining

whether [plaintiff] is or is not disabled." Channel, 747 F.2d at 583. Where nonexertional limitations affect the range of work of which plaintiff is capable, the grids may serve only as a framework to assist in determining whether sufficient jobs exist in the national economy given plaintiff's limitations and characteristics. Gossett v. Bowen, 862 F.2d 802, 806 (10th Cir. 1988).

Nonetheless, "[T]he mere presence of a nonexertional impairment does not automatically preclude reliance on the grids. Use of the grids is foreclosed only '[t]o the extent that nonexertional impairments further limit the range of jobs available to the [plaintiff].'" Channel, 747 F.2d at 583, n.6 (quoting Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983)). Thus, use of a vocational expert is required only where plaintiff's nonexertional impairments cause a limitation on the range of work available in a particular occupational base and where no other evidence (either in the record or in vocational or occupational resources upon which the Commissioner may rely, see 20 C.F.R. § 404.1566(d)) establishes that a significant number of jobs of which plaintiff is capable are available.

Plaintiff argues that because the ALJ here did not secure testimony from a vocational expert, he erred and applied the grids conclusively. Plaintiff's argument ignores the ALJ's statement that he used grid rule 203.29 only as a framework for decisionmaking, and that "SSR 85-15 and 96-9p indicates [sic] that as long as sufficient visual acuity (to be able to handle and work with rather large objects and avoid workplace hazards) exists, substantial numbers of jobs remain in the light exertional level and

greater." (R. 21)(parentheses added). Here, the ALJ cited to Social Security Rulings, and Plaintiff does not argue that the use of the Rulings is improper. In fact, Plaintiff cites a different ruling, SSR 83-20, in support of her argument regarding use of a medical advisor. Moreover, SSR rulings are binding on an ALJs. 20 C.F.R. § 402.35(b)(1); Sullivan v. Zebley, 493 U.S. 521, 530 n.9 (1990); Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993).

As the ALJ stated and the Commissioner argues, SSR 85-15 supports the finding:

> As a general rule, even if a person's visual impairment(s) were to eliminate all jobs that involve very good vision (such as working with small objects or reading small print), as long as he or she retains sufficient visual acuity to be able to handle and work with rather large objects (and has the visual fields to avoid ordinary hazards in a workplace), there would be a substantial number of jobs remaining across all exertional levels. However, a finding of disability could be appropriate in the relatively few instances in which the claimant's vocational profile is extremely adverse, e.g., closely approaching retirement age, limited education or less, unskilled or no transferable skills, and essentially a lifetime commitment to a field of work in which good vision is essential.

SSR 85-15, 1983-1991 West's Soc. Sec. Reporting Serv., Rulings 351 (1992)(emphases added). Here, Plaintiff does not argue that during the relevant period before September 30, 2000, she was unable to handle and work with rather large objects, that her visual field was so restricted that she could not avoid ordinary hazards in the workplace, or that her vocational profile was extremely adverse. Plaintiff has shown no error in the ALJ's decision to rely upon SSR 85-15 and not to call upon the testimony of a vocational expert, and has not shown that the ALJ applied the grids conclusively.

**IV.    Whether the ALJ Erred in Failing to Secure Medical Advisor Testimony?**

Plaintiff also claims the ALJ erred in failing to secure testimony of a medical advisor regarding her mental impairments, as required by SSR 83-20. However, it is not clear how she reached this conclusion. She argues that at the hearing she provided no record evidence of mental impairments before her date last insured, but later presented medical records (of hospitalization in July 1991 due to mental impairments) to the Appeals Council. (Pl. Br. 16 & n.2). She claims "the ALJ refused to consider her medical evidence relating to her mental impairments after September 30, 2000." (Pl. Br. 16). She quotes from a hodgepodge of cases dealing with issues relating to the necessity of using a medical advisor to determine the onset date of disability as required by SSR 83-20. (Pl. Br. 16-17)(quoting Reid v. Chater, 71 F.3d 372, 374 (10th Cir. 1995); Grebenick v. Chater, 121 F.3d 1193, 1201 (8th Cir. 1997); Dominguez v. Apfel, 55 F. Supp. 2d 1172, 1178 (D. Kan. 1999); Page v. Apfel, No. 98-4068-RDR, 2000 WL 1279518 at *7, 8 (D. Kan. Aug. 30, 2000)). She then concludes that "because the ALJ failed to call a medical advisor to testify to the progress of Godinez's mental impairments prior to the expiration of her insured status, this case must be remanded as a matter of law." (Pl. Br. 17). The court cannot follow Plaintiff's argument completely, but finds no requirement for medical advisor testimony in the facts here, and finds that remand is not necessary.

Plaintiff has failed to establish that SSR 83-20 even applies to the facts of this case. The Commissioner issued SSR 83-20, "To state the policy and describe the relevant evidence to be considered when establishing the onset date of disability under the

provisions of . . . the . . . Act . . . and implementing regulations." SSR 83-20, 1983-1991 West's Soc. Sec. Reporting Serv., Rulings 49 (1992). Here, the ALJ found there is no evidence of mental impairment before Plaintiff's date last insured, and found that she was not disabled at any time before her date last insured. (R. 20, 22).

Implicit in Plaintiff's argument is an assertion that she is presently disabled and that the ALJ should have followed the dictates of SSR 83-20 and determined the onset date of her disability in order to determine if it was before her date last insured. However, beyond her own assertion and her application for disability, Plaintiff provides no finding or evidence that establishes conclusively that she is disabled. The ALJ did not state or imply that Plaintiff became disabled after her date last insured. As the Commissioner points out, in an unpublished opinion the Tenth Circuit has held that "the need to determine an onset date is relevant only where a claimant has been found disabled." Gutierrez v. Astrue, No. 07-2057, 253 Fed. Appx. 725, 729 (10th Cir. Oct. 31, 2007). The court finds the rationale of Gutierrez compelling here. The ALJ did not find disability, and there was simply no basis or necessity to establish an onset date or to apply SSR 83-20. The ALJ did not err in failing to call upon the services of a medical advisor.

The cases cited by Plaintiff do not compel a different result. In Dominguez, the court noted that although plaintiff was found not disabled for DIB in the case at issue, she had later been found disabled for SSI. Dominguez, 55 F. Supp. 2d at 1174. Similarly, in Page the court stated, "the evidence appears uncontroverted that plaintiff is currently disabled from working because of mental illness." Page, 2000 WL 1279518 at *8.

Likewise, in <u>Reid</u>, the court noted plaintiff was found not disabled on his date last insured, but was found disabled thereafter.  <u>Reid</u>, 71 F.3d at 373.  Finally, <u>Grebenick</u> is to the same effect.  Mrs. Grebenick was found not disabled on her date last insured, but she was admitted to a nursing home due to her impairments twelve years later and passed away four years thereafter.  <u>Grebenick</u>, 121 F.3d at 1196-97.  Contrary to the circumstances present here, in <u>Dominguez</u>, <u>Page</u>, <u>Reid</u>, and <u>Grebenick</u> the facts as found by the ALJ presented the possibility that plaintiff's onset date may have been before the date last insured.  Here, there is no finding of disability after Plaintiff's date last insured.  Moreover, each court recognized that the services of a medical advisor are necessary "only if the medical evidence of onset is ambiguous."  <u>Reid</u>, 71 F.3d at 374; <u>Grebenick</u>, 121 F.3d at 1201; <u>Dominguez</u>, 55 F. Supp. 2d at 1178; <u>Page</u>, 2000 WL 1279518 at *8.

Plaintiff has shown no error in the Commissioner's decision.

**IT IS THEREFORE ORDERED** that judgment be entered in accordance with the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's decision.

Dated this 22nd day of September 2010, at Kansas City, Kansas.


s/ John W. Lungstrum
**John W. Lungstrum**
**United States District Judge**